**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **JOHN SMITH,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **CIVIL ACTION NO.** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **CHALAK RESTAURANTS** | ) | _____ |
| **CORDOVA LLC.** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## COMPLAINT

## INTRODUCTION

Plaintiff, John Smith, files this Title III, ADA action, pursuant to 42 U.S.C. §12181, et. seq. In Count One of the Complaint, Plaintiff seeks to enjoin the Defendant to remove architectural barriers. In Count Two, Plaintiff seeks to enjoin Defendant to maintain practices, policies, and procedures necessary to maintain the premises free of architectural barriers both now and once the barriers are removed. In Count Three, Plaintiff seeks to enjoin the Defendant's use of the premises to provide full and equal enjoyment of the Genghis Grill environment to persons with a disability. Counts Two and Three seek independent relief in addition to the removal of architectural barriers. Count Four seeks to enjoin Defendant's failure to design and construct the establishment to be readily accessible to and usable by individuals with disabilities.

### JURISDICTION, PARTIES, AND ARTICLE III STANDING

1.    Because this is an action for declaratory and injunctive relief pursuant to Title III of the Americans with Disabilities Act, 42 U.S.C. §12181, et. seq., (hereinafter referred to as the "ADA") and its implementing regulations, this Court is vested with original jurisdiction under 28

U.S.C. §1331 and §1343.

2.      Venue is proper in this Court, the United States District Court for the Western District of Tennessee, pursuant to Title 28, U.S.C. §1391 and the Local Rules of the United States District Court for the Western District of Tennessee.

3.      Plaintiff, John Smith, is a person with a disability in that he was diagnosed with diabetes over forty years ago, and as a result,  consequently had a double amputation, losing both of his legs. Mr. Smith uses a wheelchair for mobility. The extent of Mr. Smith's physical impairments limits his ability to care for himself, perform manual tasks, walk, stand, lift, bend, and work, all of which are major life activities pursuant to 42 U.S.C. § 12102 (2) (A). Plaintiff, accordingly, is a person with a disability pursuant to the Americans with Disabilities Act, in that he has a physical impairment substantially limiting one or more major life activities. 42 U.S.C. § 12102; See also, 28 C.F.R. § 36.104.

4.      Defendant, Chalak Restaurants Cordova LLC, (hereinafter "Genghis Grill"), is a limited liability corporation that is both registered to conduct business and is conducting business within the State of Tennessee sufficient to create both general and specific in personam jurisdiction. Upon information and belief, Chalak Restaurants Cordova LLC, "operates" and "leases" the Genghis Grill restaurant and its improvements located at 2362 N Germantown Pkwy, Memphis, TN 38016. 42 U.S.C. § 12182. The restaurant is a commercial facility in that the facility is intended for nonresidential use and affects commerce. 42 U.S.C. § 12181(2)((A). Pursuant to 42 U.S.C. § 12181(7) and 28 C.F.R. § 36.104, the Defendant's establishment is a place of public accommodation in that it is a restaurant providing food and drinks to the public. Accordingly, it is covered by the ADA and must comply with the Act.

5.      All events giving rise to this lawsuit occurred in the Western District of Tennessee

and the Defendants are citizens thereof.

6.      Plaintiff John Smith travels from his home in Muscle Shoals, Alabama to Memphis, Tennessee at least once a year and usually more often. Mr. Smith enjoys going to Memphis because he likes the city. Mr. Smith enjoys dining at Genghis Grill because of its popular build-your-own-bowls. Mr. Smith intends to continue patronizing Genghis Grill because he wants to enjoy the premier dining experience that Genghis Grill offers by maintaining 80 delicious, fresh ingredients to build-your-own bowl. He will return not only to dine, but also to confirm compliance with the ADA by the Defendant. Plaintiff cannot provide a specific time and date upon which he will return to the restaurant because he has not and should not be expected to engage in such definite future planning. Plaintiff, like other customers, often patronizes a restaurant on the spur of the moment. Such specific planning is not necessary to invoke the ADA. Mr. Smith definitely intends to return to Genghis Grill in the near future. He will continue to dine there when it has been made ADA compliant.

7.      Because of the barriers described below in paragraph 20 and throughout the Complaint, Plaintiff has been denied full and equal enjoyment of the Defendant's premises on the basis of his disabilities.

8.      Plaintiff accordingly, has Article III standing to pursue this case because (1) he is a person with a disability, pursuant to the statutory and regulatory definition; (2) the Defendant's restaurant is a place of public accommodation, pursuant to the statutory and regulatory definition; (3) he has suffered a concrete and particularized injury by being denied access to the establishment by architectural barriers, by being denied access by the Defendant's practices described herein, and by Defendant's denial of the use of the restaurant for his full and equal enjoyment as compared to people without disabilities. and (4)

Furthermore, due to these injuries, there exists a genuine threat of imminent future injury as long as the barriers described remain at the facility.

**PLAINTIFF'S CLAIMS**

**ADA, Title III**

9.      On or about July 26, 1990, Congress enacted Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12181 et.seq. Commercial enterprises were provided one and a half years from enactment of the statute to implement its requirements. The effective date of Title III of the ADA was January 26, 1992. (42 U.S.C. §12181; 20 C.F.R. §36.508 (A); *See also*, § 36.304).

10.     Pursuant to 42 U.S.C. § 12181(7) and 28 C.F.R. § 36.104, the Defendant's establishment is a place of public accommodation in that Genghis Grill is a restaurant offering food and drinks to the public. Accordingly, they are covered by the ADA and must comply with the Act.

**COUNT ONE**
**VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, TITLE III**
**42 U.S.C. § 12182(b)(2)(A)(iv)**
***(Architectural Barriers)***

**Defendant's Existing Facilities Are Subject to the 2010 ADA Design Standards for the Portions of the Facilities Addressed in This Complaint**

11.     Plaintiff is informed and believes based on publicly available information that the building in which Genghis Grill is located was constructed in 2010.

12.     Plaintiff is further informed and believes based on publicly available information that the Genghis Grill underwent alterations and/or improvements after 2010.

13.     The ADA was enacted requiring that facilities constructed prior to January 26, 1992, are considered an "existing "facility, such that those facilities must remove architectural

barriers where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv). All "alterations" made to existing facilities after January 26, 1992, and all "new construction" after January 26, 1993, must be *readily accessible to and usable by individuals with disabilities*, including *individuals who use wheelchairs*. 42 U.S.C. § 12183(a) and (b). 28 *C.F.R.* § 36.402. "Readily accessible to and usable by. . ." is the "new construction" standard, which requires compliance with the Department of Justice standards. 42 U.S.C. § 12183(a)(1); 28  *C.F.R.* § 36.406. The only defense for failing to provide readily accessible and usable buildings constructed under the "new construction" standards is if the design and construction of the building to be readily accessible and usable is "structurally impracticable". 42 U.S.C. § 12183(a)(1). The "structural impracticability" defense applies only in rare circumstances of extraordinary terrain. 28 *C.F.R.* § 36.401(c). "Readily accessible to and usable by. . ." is also the "alterations" standard. 42 U.S.C. § 12183(a)(2). "Alterations" must be made to the maximum extent feasible.  42 U.S.C.  § 12183(a)(2); 28 *C.F.R.* § 36.402. An alteration is a change to a place of public accommodation or commercial facility that affects or could affect the usability of the facility or any part thereof. 28 *C.F.R.* § 36.402(b).

14.     New construction and alterations must comply with either the Justice Department's 1991 Standards for Accessible Design, or the 2010 Standards for Accessible Design. 28 *C.F.R.* § 36.406 establishes whether the 1991 Standards for Accessible Design or 2010 Standards for Accessible Design apply: New construction and alterations subject to §§ 36.401 or 36.402 shall comply with the 1991 Standards if the date when the last application for a building permit or permit extension is certified to be complete by a State, county, or local government is before September 15, 2010, or if no permit is required, if the start of physical construction or alterations occurs before September 15, 2010. 28 *C.F.R.* § 36.406(a)(1). New construction and alterations subject to §§

36.401 or 36.402 shall comply either with the 1991 Standards or with the 2010 Standards if the date when the last application for a building permit or permit extension is certified to be complete by a State, county, or local government is on or after September 15, 2010, and before March 15, 2012, or if no permit is required, if the start of physical construction or alterations occurs on or after September 15, 2010, and before March 15, 2012. 28 *C.F.R.* § 36.406(a)(2). New construction and alterations subject to §§ 36.401 or 36.402 shall comply with the 2010 Standards if the date when the last application for a building permit or permit extension is certified to be complete by a State, county, or local government is on or after March 15, 2012, or if no permit is required, if the start of physical construction or alterations occurs on or after March 15, 2012. *Where the facility does not comply with the 1991 Standards, the 2010 Standards are applicable.* See 28 C.F.R. § 36.406(5)(ii) which states, "Newly constructed or altered facilities or elements covered by §§ 36.401 or 36.402 that were constructed or altered before March 15, 2012 and that do not comply with the 1991 Standards shall, on or after March 15, 2012, be made accessible in accordance with the 2010 Standards."

15.     For the architectural barriers at issue in this case, the 2010 Standards for Accessible Design are applicable.

**Plaintiff's Concrete and Particularized Standing to Pursue an Injunction**

16.     Defendant has discriminated, and continues to discriminate, against Plaintiff, and others who are similarly situated, by denying full and equal access to, and full and equal enjoyment of goods, services, facilities, privileges, advantages and/or accommodations at Genghis Grill in derogation of 42 U.S.C. § 12101 et. seq., and as prohibited by 42 U.S.C. § 12182 et-seq. As "new construction", the building must be readily accessible to and usable by individuals with disabilities.

42 U.S.C. § 12183 (a) and (b).  Defendant's failure to remove the existing barriers thus violates 42 U.S.C. § 12182(b)(2)(A)(iv), which requires removal of architectural barriers.

17.     As described above, prior to the filing of this lawsuit, Plaintiff was denied full and safe access to all of the benefits, accommodations and services offered to individuals without disabilities within and about the Defendant's establishment. Plaintiff's access was inhibited by each of the described architectural barriers detailed in this Complaint which remain at the establishment in violation of the ADA. Because of the foregoing, Plaintiff has suffered an injury-in-fact in precisely the manner and form that the ADA was enacted to guard against.

18.     Plaintiff has definite plans to return to Genghis Grill in the future, as described in paragraph 6. Plaintiff will return to Genghis Grill in both Fall 2018 and Spring 2019 to enjoy the build-your-own bowl experience Genghis Grill offers and to see if Defendant has repaired the barriers, and changed its practices and procedures. Plaintiff will continue to do so even when the restaurant is repaired, because Genghis Grill offers a premier dining experience by maintaining 80 delicious, fresh ingredients to build-your-own bowl. Also, and of vital importance, the barriers are not just created by construction issues; instead, many of them are created by human activity, from the way the Defendant's workers at the establishment use the physical architectural elements of the Facility. The barriers created by human activity should be reviewed and maintained continuously to ensure Defendant's management and employees continue to act in a manner that does not create barriers. Absent remedial action by Defendant, Plaintiff will continue to encounter the architectural barriers, and the discriminatory policies, practices, and procedures described herein and as a result, be discriminated against by Defendant on the basis of his disabilities. The Eleventh Circuit held in *Houston v. Marod Supermarkets*, 733 F.3d 1323 (11th Cir. 2013), when architectural barriers have not been remedied "*there is a 100% likelihood that plaintiff… will suffer*

*the alleged injury again when plaintiff returns to the store.*" Due to the definiteness of Plaintiff's future plans to continue visiting the subject establishments, there exists a genuine threat of imminent future injury.

**Architectural Barriers**

19.     Pursuant to the mandates of 42 U.S.C. § 12134(a), on July 26, 1991, the Department of Justice, Office of the Attorney General, promulgated Federal Regulations to implement the requirements of the ADA. 28 C.F.R. Part 36.

20.     Plaintiff has been from the entrance to the bar; from the bar to and throughout the dining area; from the dining area to the restrooms; the restrooms themselves; from the restrooms to and throughout circulation paths and accessible routes, paths of travel, and in particular but not limited to all of which is more specifically described below. Moreover, Defendant's facility located at 2362 N Germantown Pkwy, Memphis, TN 38016, violates the ADA at the bar, in the dining area, in the restrooms, and in particular but not limited to:

A.  The front entrance floor mats are not stable, firm, or otherwise secured to the floor;

B.  The floor mats throughout the establishment are not stable, firm, or otherwise secured to the floor;

C.  Defendant provides a build your own stir fry self-service counter for able-bodied individuals to select vegetables, protein, sauces and other items to build their own stir fry bowl but fails to afford individuals with disabilities the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to other individuals without disabilities, which includes but is not limited to the following failures of Defendant:

(1) There is not at least one of each type of self-service counter that is maintained in conformance with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by individuals with disabilities which has the discriminatory effect of rendering the counter, its associated elements, and services offered at the counter as unusable by individuals with disabilities;

(2) There is not at least one of each type of self-service counter that is maintained in operable condition by conforming with the ADA Standards for Accessible Design so that the accessible counter and it's associated elements are located adjacent to a walking surface complying with 403;

(3) There is not  at least one of each type of self-service counter that is maintained in operable condition by conforming with the ADA Standards for Accessible Design so that a portion of the counter surface that is 36 inches long minimum and 36 inches high maximum above the finish floor is readily usable by individuals with disabilities which includes maintaining a clear floor or ground space complying with 305 positioned for either a parallel approach adjacent to the 36 inch minimum length of counter, or, alternatively, A portion of the counter surface that is 30 inches long minimum and 36 inches high maximum with Knee and toe space complying with 306 provided under the counter and a clear floor or ground space complying with 305 positioned for a forward approach to the counter;

(4) There is not at least one of each type of self-service counter that is maintained in operable condition with the ADA Standards for Accessible

Design in all the ways that are required to be readily accessible to and usable by individuals with disabilities which includes but is not limited to maintaining the clear counter surface free of obstructions or any other clutter that could have the discriminatory effect of rendering the counter and its associated benefits and services as unusable by individuals with disabilities;

**(5)** There is not at least one of each type of self-service counter that is maintained in operable condition with the ADA Standards for Accessible Design so that the accessible counter extends the same depth as the non-accessible portion of the counter;

**(6)** There is not at least one of each type of self-service counter that is maintained in operable condition with the ADA Standards for Accessible Design so that a credit card payment terminal is positioned or otherwise maintained in a readily accessible to and independently usable location at the accessible counter which has the discriminatory effect in practice of affording individuals with disabilities an unequal opportunity to independently transact business in the same manner as non-disabled individuals;

**(7)** Defendant fails to maintain the accessible features of the self-service counter that are required to be readily accessible to and usable by individuals with disabilities;

**D.** Defendant provides several types of dining surfaces disbursed throughout the establishment for the consumption of food or drink at the bar for able-bodied

individuals, but fails to maintain that same level of service to individuals with disabilities, which segregates and relegates individuals with disabilities to inferior benefits of the goods and services provided at Defendant's place of public accommodation which includes but is not limited to the following failures of Defendant:

(1) There is not at least 5% of the seating spaces and standing spaces at the bar that is maintained in conformance with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by individuals with disabilities which includes but is not limited to the accessible route to the dining surfaces which has the discriminatory effects of rendering the bar area seating spaces and associated elements as unusable by individuals with disabilities;

(2) There is not at least 5% of the seating spaces and standing spaces at the bar area that are maintained in operable condition with the ADA Standards for Accessible Design so that the seating spaces maintain the required t-shaped and/or circular turning clear floor space;

(3)  There is not at least 5% of the seating spaces and standing spaces at the bar area that are maintained in operable condition with the ADA Standards for Accessible Design so that the seating spaces maintain the required 30x48 inches of clear floor space that is positioned for a forward approach to the dining surface;

(4) There is not at least 5% of the seating spaces and standing spaces at the bar area that are maintained in operable condition with the ADA Standards

for Accessible Design so that the tops of the dining surfaces measure 28 inches minimum and 34 inches maximum above the finished floor which includes the required 30 inches of clear dining surface so that the surface does not prohibit individuals with disabilities from being equally afforded the opportunity to sit and enjoy the goods and services at the establishment;

E.  Defendant provides several types of dining surfaces disbursed throughout the establishment for the consumption of food or drink at the seating area which includes hybrid booth dining surfaces, standard dining surfaces and high-top dining surfaces for able-bodied individuals, but fails to maintain that same level of service to individuals with disabilities, which segregates and relegates individuals with disabilities to inferior benefits of the goods and services provided at Defendant's place of public accommodation which includes but is not limited to the following failures of Defendant:

(1) There is not at least 5% of each type of seating spaces and standing spaces disbursed throughout the indoor dining area that is maintained in conformance with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by individuals with disabilities which includes but is not limited to maintaining an accessible route to the dining surfaces which has the discriminatory effect of rendering the indoor seating spaces and associated elements as unusable by individuals with disabilities;

**(2)** There is not at least 5% of each type of seating spaces and standing spaces disbursed throughout the indoor dining area that is maintained in operable condition with the ADA Standards for Accessible Design so that the seating spaces maintain the required t-shaped and/or circular turning clear floor space;

**(3)** There is not at least 5% of each type of seating spaces and standing spaces disbursed throughout the indoor dining area that is maintained in operable condition with the ADA Standards for Accessible Design so that the seating spaces maintain the required 30x48 inches of clear floor space that is positioned for a forward approach to the dining surface;

**(4)** There is not at least 5% of each type of seating spaces and standing spaces disbursed throughout the indoor dining area that is maintained in operable condition with the ADA Standards for Accessible Design so that the tops of the dining surfaces measure 28 inches minimum and 34 inches maximum above the finished floor which includes the required 30 inches of clear dining surface so that the surface does not prohibit individuals with disabilities from being equally afforded the opportunity to sit and enjoy the goods and services at the establishment;

**F.** Defendant provides a restroom for able-bodied individuals, but fails to afford individuals with disabilities the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to other individuals without disabilities, which includes but is not limited to the following failures of Defendants:

(1) The informational signage that provides direction to or information about interior spaces and facilities fails to be maintained in conformance with the ADA Standards for Accessible Design so that the signage displays the International Symbol of Accessibility to provide direction to or information about the ADA accessible interior spaces that are usable by people with disabilities;

(2) The restroom entrance door fails to be maintained in conformance with the ADA Standards for Accessible design in all the ways that are required to be readily accessible to and usable by individuals with disabilities which includes but is not limited to maintaining the required maneuvering clearance at the doorway, providing operable door hardware that that is usable by individuals with disabilities, and maintaining all the required associated elements at the entrance door in a readily Accessible condition as to be usable by individuals with disabilities;

(3) The restroom entrance door fails to be maintained in conformance with the ADA Standards for Accessible Design by failing to provide the required 18 inches of latch side clear floor space on the pull side of the door;

(4) There is not at least one toilet stall that is maintained or otherwise configured in conformance with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by individuals with disabilities including the maneuvering clearance to approach the stall, clear floor space at the stall door, and other associate design requirements which has the discriminatory effect of rendering the

restroom and its associated elements as unusable by individuals with disabilities;

**(5)** The restroom fails to maintain at least one ADA accessible toilet stall in operable condition by conforming with the ADA Standards for Accessible Design so that the toilet stall is arranged for either a left or right hand approach to the stall and otherwise maintained in the condition required by the ADA Standards for accessible Design so that the toilet stall and its associated elements are not rendered unusable by individuals with disabilities;

**(6)** The restroom fails to maintain at least one ADA accessible toilet stall in operable condition by conforming with the ADA Standards for Accessible Design so that the stall door is furtherst from the water closet;

**(7)** The restroom fails to maintain at least one ADA accessible toilet stall in operable condition by conforming with the ADA Standards for Accessible Design so that the toilet stall is arranged for either a left or right hand approach with the required maneuvering clearance maintained around the water closet so that the maneuvering clear floor space around the water closet is not obstructed and consequently rendering the stall as unusable by individuals with disabilities;

**(8)** The restroom fails to maintain at least one ADA Accessible toilet stall in operable condition by conforming with the ADA Standards for Accessible Design so that the toilet paper dispensers operable parts comply with the

applicable standards for accessible design and is otherwise located 7-9 inches from the front of the water closet;

**(9)** The restroom fails to maintain at least one ADA accessible toilet stall in operable condition by conforming with the ADA Standards for Accessible Design so that the side wall grab bar conforms with the ADA Standards for Accessible Design in all the ways that it is required to be readily accessible to and usable by disabled individuals which includes but is not limited to maintaining a 42 inch long grab bar that is located a maximum of 12 inches from the rear wall and extending a maximum distance of 54 inches from the rear wall, with the top gripping surface of the grab 33-36 inches above the finished floor;

**(10)** The restroom fails to maintain at least one ADA accessible toilet stall in operable condition by conforming with the ADA Standards for Accessible Design so that the rear wall grab bar conforms with the ADA Standards for Accessible Design in all the ways that it is required to be readily accessible to and usable by disabled individuals which includes but is not limited to maintaining a 36 inch long grab bar installed so that it is located 12 inches on the closed side of the toilet room and 24 inches on the transfer side and mounted so that the top gripping surface measures 33-36 inches above the finished floor;

**(11)** The restroom fails to maintain at least one ADA Accessible toilet stall in operable condition or otherwise configured in away by conforming with the ADA Standards for Accessible Design so that the toilet stall maintains a

door and its associated hardware in an accessible and usable condition by individuals with disabilities including but not limited to maintaining door pulls on both sides of the stall door and ensuring the door is self-closing;

**(12)** Defendants fail to maintain the accessible features of the restroom that are required to be readily accessible to and usable by individuals with disabilities;

**G.** Defendant provides a lavatory in the restroom for able-bodied individuals, but fails to afford individuals with disabilities the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to individuals without disabilities, which includes but is not limited to the following failures of Defendant:

**(1)** The lavatory fails to be maintained in conformance with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by individuals with disabilities which has the discriminatory effect of rendering the lavatory sink and its associated elements as unusable by individuals with disabilities;

**(2)** There is not at least one ADA accessible lavatory that is maintained in a usable condition so that the top surface of the rim on the lavatory sink measures a maximum of 34 inches above the finished floor and positioned for a forward approach;

**(3)** There is not at least one ADA accessible lavatory that is maintained in a usable condition so that the lavatory is not confined on all or part of three

sides for more than 12 inches and fails to provide the required clear floor surface for alcoves;

(4) The clear floor space at the lavatory sink fails to be maintained in conformance with the ADA Standards for Accessible Design so that the knee and toe clearance is not restricting the usability by individuals with disabilities;

(5) The paper towel dispenser fails to be maintained in a usable condition so that the dispenser measures a maximum of 48 inches above the finished floor;

(6) There is not at least one lavatory with a mirror that is maintained in a usable condition so that the bottom reflecting surface of the mirror measures a maximum of 40 inches above the finished floor;

(7) There is not at least one lavatory with a soap dispenser that is maintained in a usable condition so that the dispenser measures a maximum of 48 inches above the finished floor;

21. To date, the barriers to access and other violations of the ADA still exist and have not been remedied or altered in such a way as to effectuate compliance with the provisions of the ADA.

22. Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action. He is entitled to have his reasonable attorney's fees, costs and expenses paid by the Defendant pursuant to 42 U.S.C. §12205.

23. Pursuant to 42 U.S.C. §12188, this Court is vested with the authority to grant Plaintiff's injunctive relief, including an Order to alter the discriminating facility to

make them readily accessible to, and usable by, individuals with disabilities to the extent required by the ADA, and closing the facility until the requisite modifications are completed, and to further order the Defendant to modify its policies, practices, and procedures, to provide equal use of its facilities, services and benefits to individuals with disabilities.

## COUNT TWO
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, TITLE III
## 42 U.S.C. § 12182(b)(2)(A)(ii)
### *(Practices, procedures, and policies denying equal benefits)*
### ADA Title III Prohibits Other Discrimination in Addition to Architectural Barriers

24.   Plaintiff incorporates by reference and re-alleges all of the paragraphs above.

25.   The ADA, Title III, provides a private right of action for "any person who is being subjected to discrimination on the basis of disability in violation of" Title III. 42 U.S.C. § 12182(a)(1) (emphasis added).

26.   The ADA, Title III, specifically makes it unlawful to provide individuals with disabilities with an "unequal benefit," and to relegate individuals with disabilities to a "different or separate" benefit. 42 U.S.C. §§ 12182(b)(1)(A))(ii)-(iii); 28 C.F.R. § 36.202(b)-(c). In other words, customers with disabilities must receive equal benefits as the nondisabled. Further, 28 C.F.R. § 302(b) requires that goods, services, and accommodations be provided to individuals with disabilities in "the most integrated setting appropriate." 42 U.S.C. § 12182(b)(1)(B); 28 C.F.R. § 36.203(a). Similarly, the Preamble in addition to recognizing that persons who use wheelchairs and mobility aids have been forced to sit apart from family and friends, also recognizes that persons who use wheelchairs and mobility aids historically have been provided "segregated accommodations" compared to non-disabled individuals, thus relegating

persons who use wheelchairs "to the status of second-class citizens." See 28 C.F.R. pt. 36, App. B, at 631-633, 651 (2000) (discussion of §§ 36.308, 36.203).

27.  Congress enacted the ADA in light of its findings that "individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities."  42 U.S.C. § 12101(a)(5).

28.  To address this broad range of discrimination in the context of public accommodations, Congress enacted ADA, Title III, which provides in part: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. 12182.

29.  By its clear text, ADA, Title III requires a public accommodation to provide individuals with disabilities *more than simple physical access.* Removal of architectural barriers as required by Count One of this Complaint is but one component of compliance with ADA, Title III. Congress recognized that "individuals with disabilities continually encounter various forms of discrimination" including not only barriers to physical access, but also other forms of exclusion and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities. 42 U.S.C. 12101(a)(5); see also H.R. Rep. No. 485, Pt. 2, 101st Cong., 2d Sess. 35-36 (1990)

("lack of physical access to facilities" was only one of several "major areas of discrimination that need to be addressed"); H.R. Rep. No. 485, Pt. 3, 101st Cong., 2d Sess. 54 (1990) ("It is not sufficient to only make facilities accessible and usable; this title prohibits, as well, discrimination in the provision of programs and activities conducted by the public accommodation.").

30.     For that reason, the Act applies not only to barriers to physical access to places of public accommodation, but also to any policy, practice, or procedure that operates to deprive or diminish to individuals with disabilities, the full and equal enjoyment of the privileges and services offered                    to the public. 42 U.S.C. § 12182. Thus, a public accommodation may not have a policy, practice or procedure that excludes individuals with disabilities from services. 42 U.S.C. § 12182(b)(2)(A)(ii). The Eleventh Circuit held in _Rendon v. Valleycrest Prod., Ltd._ 294 F.3d 1279, (11th Cir. 2002) that:

> _"A reading of the plain and unambiguous statutory language at issue reveals that the definition of discrimination provided in Title III covers both_ <u>_tangible barriers_</u> _(emphasis added), that is, physical and architectural barriers that would prevent a disabled person from entering an accommodation's facilities and accessing its goods, services and privileges, see 42 U.S.C. § 12182(b)(2)(A)(iv), and_ <u>_intangible barriers_</u> _(emphasis added), such as eligibility requirements and screening rules or discriminatory policies and procedures that restrict the ability of a person with a disability to enjoy the Defendant entity's goods, services and privileges."_

## **Defendant's Failed Practices and Lack of Policies Are Discriminatory**

31.     Pursuant to 42 U.S.C. § 12182(b)(2)(A)(ii) discrimination includes:

> "*a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations*."

32.   Accordingly, a place of public accommodation must modify a policy or practice that has the consequence of, or tends to deny, access to goods or services to people with disabilities. Similarly, a place of public accommodation must not have a policy or practice that "has a discriminatory effect in practice" of preventing disabled individuals from realizing the full and equal enjoyment of the goods and services the public accommodation offer to potential customers. *Nat'l Fed'n of the Blind v. Scribd Inc.*, 97 F.Supp.3d 565 (D. Vt. 2015).

33.   As detailed below, Defendant has failed to make reasonable modifications in its policies, practices, and procedures that are necessary to afford its goods, services, facilities, privileges, advantages, or accommodations to individuals with restricted mobility. By failing to make such efforts that may be necessary to ensure that no individual with a disability is excluded, Defendant denied services, segregated or otherwise treated Plaintiff differently than other individuals who are not disabled. Pursuant to 42 U.S.C. § 12182(b)(2)(A), Defendant has discriminated against Plaintiff. Defendant will continue that discrimination forever until enjoined as Plaintiff requests. The discrimination is described more particularly in the following paragraphs.

34.   Defendant either has no policies, practices, and procedures to remove architectural barriers or else it does not abide by them. The rampant architectural barriers

previously identified in Count One establish that Defendant has failed to create, adopt, and/or implement ADA Title III compliance policies, procedures, and practices as to architectural barriers.

35. Defendant's use of its establishment, and its practices at the establishment located at 2362 N Germantown Pkwy, Memphis, TN 38016, literally creates barriers and in so doing denies Plaintiff the full and equal enjoyment of Genghis Grill. Those practices include:

    a) Defendant makes the self-service counter inaccessible for use by individuals with disabilities by failing to provide either a parallel or a forward approach to the counters, which means Mr. Smith cannot fully and equally use the counters in the way the non-disabled do, because the non-disabled have counters they can use;

    b) Defendant's seating arrangements are designed, positioned, and oriented in a way that excludes or otherwise segregates individuals with disabilities to an experience that is not the same experience that is afforded to able-bodied individuals, because unlike able bodied individuals, individuals with disabilities are forced to sit at one type of table and/or facing the wall, or are outright excluded from the "opportunity" to sit anywhere else that able-bodied individuals are able to sit and enjoy the Genghis Grill build your own stir fry experience;

    c) Defendant makes its bar counter seating inaccessible for use by people with disabilities by failing to provide a bar counter that conforms to the ADA design standards, which means Plaintiff cannot fully and equally order

drinks at the bar, enjoy happy hour at the bar counter, watch sporting events on the TV's at the bar, view the on-tap beer selection, view the outstanding selection of wines, or any other benefit or service provided at the bars in the same way the non-disabled do, because the non-disabled have bar counters they can use to receive and enjoy all of the goods and services offered at Genghis Grill;

**d)** Defendant fails to provide ADA accessible seating tables in the bar area, which means Plaintiff cannot use or dine in the bar area like non-disabled individuals can;

**e)** Defendant fails to provide ADA accessible seating tables in the dining area, including but not limited to the standard dining tables, hybrid booth dining tables, and high-top dining tables, which means Plaintiff cannot use or dine in the dining area in the same manner as non-disabled individuals;

**f)** Defendant fails to provide a place for customers with disabilities both to sit and eat in the same manner as able-bodied people;

**g)** Defendant makes its toilet facilities inaccessible for use by individuals with disabilities by failing to maintain any ADA accessible elements within the restrooms so that Plaintiff is afforded the opportunity to independently use the restroom fixtures and elements, or move into and throughout the restroom, whereas non-disabled individuals are able to independently use all of the restrooms' elements;

**h)** Defendant, according to its own publicly available information, lacks any

policies, practices, and/or procedures that ensure the "use" of its facilities in compliance with the ADA;

   **i)** Defendant's policies, practices, and procedures are conducted without regard to individuals with disabilities;

36. As the continuing architectural barriers and the failure to provide full and equal use of the facility establishes, Defendant has no policies, practices, or procedures, or else they have failed to implement them, to ensure that any removal of architectural barriers is permanent. 42 U.S.C. § 12182(b)(2)(a)(iv) and (v).

37. As the continuing architectural barriers and the failure to provide full and equal use of the facility establishes, Defendant's existing practice, both effectively and/or explicitly, is to remediate ADA Title III architectural barriers only upon demand by individuals with disabilities.

38. As the continuing architectural barriers and the failure to provide full and equal use of the facility establishes, Defendant has no policies, practices, and procedures or else they failed to create, implement and maintain policies and procedures to ensure individuals with disabilities are able to have the same experience at its facilities as individuals without disabilities, 42 U.S.C. 12182(b)(1)(A), and in particular the opportunity to have full and equal access to all of the goods, services, privileges, advantages, or accommodations of Genghis Grill, as described above in detail.

39. As the continuing architectural barriers and the failure to provide full and equal use of the facility establishes, Defendant has failed to create, implement, and maintain a policy of complying with ADA building design standards and regulations.

40. To date, the Defendant's discriminating policies, practices, and/or procedures have

not been reasonably modified to afford goods, services, facilities, privileges, advantages, or other accommodations to individuals with disabilities.

41. A reasonable modification in the policies, practices, and procedures described above will not fundamentally alter the nature of such goods, services, facilities, privileges, advantages, and accommodations. The Plaintiff hereby demands that Defendant both create and adopt a corporate practice and policy that Defendant (1) will fully comply with Title III, ADA, and all its implementing regulations so that architectural barriers identified above are permanently removed from Defendant's establishment consistent with the ADA; (2) Defendant will provide individuals with disabilities, including those with mobility limitations full and equal use and enjoyment of Genghis Grill; (3) Defendant will modify its practice of making ADA Title III architectural barrier remediations only upon demand by individuals with disabilities.

42. Chalak Restaurants Cordova LLC is the "operator" of the Genghis Grill restaurant located at 2362 N Germantown Pkwy, Memphis, TN 38016, and is therefore, pursuant to 42 U.S.C. § 12182, responsible for creating, implementing, and maintaining policies, practices and procedures, as alleged above.

43. The ADA is over twenty-five (25) years old. Defendant is aware of its obligation to comply with the ADA Title III. The ADA Title III requires modifications in policies, practices, and procedures to comply with its requirements. 42 U.S.C. §12182(b)(2)(A)(ii).

44. Plaintiff, hereby, provides sufficient notice of his demands for an alteration in Defendant's policies, practices, and procedures.

45. Plaintiff has been obligated to retain the undersigned counsel for the filing and

prosecution of this action. He is entitled to have his reasonable attorney's fees, costs and expenses paid by the Defendant pursuant to 42 U.S.C. § 12205.

46. Pursuant to 42 U.S.C. § 12188 this Court is authorized to enjoin these illegal policies, practices, and procedures.

## COUNT THREE
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT
### *Denial of Full and Equal Enjoyment*

47. Plaintiff incorporates by reference and re-alleges all of the paragraphs above.

48. 42 U.S.C. § 12182(a) provides:

> *"No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."*

49. Congress enacted the ADA upon finding, among other things, that "society has tended to isolate and segregate individuals with disabilities" and that such forms for discrimination continue to be a "serious and pervasive social problem." 42 U.S.C. § 12101(a)(2).

50. Congress also found that: "*individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities,* 42 U.S.C.

§ 12101(a)(5); "*the nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living, and economic self-sufficiency for such individuals*;" 42 U.S.C. § 12101(a)(7). Congress even found that: "*the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and nonproductivity.*" 42 U.S.C. § 12101(a)(8).

51. In response to these findings, Congress explicitly stated that the purpose of the ADA is to provide "a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities" and "clear, strong, consistent, enforceable standards addressed discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1)-(2).

52. The ADA provides, inter alia, that it is discriminatory to subject an individual or class of individuals on the basis of a disability "to a denial of the opportunity of the individual or class to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity." 42 U.S.C. § 12182(a)(i).

53. The ADA further provides that it is discriminatory "to afford an individual or class of individuals, on the basis of a disability ... with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals." 42 U.S.C. § 12182(a)(ii).

54. Congress enacted the ADA in light of its findings that "individuals with disabilities continually encounter various forms of discrimination, including outright intentional

exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities." 42 U.S.C. 12101(a)(5). Defendant's acts and omissions alleged herein are in violation of the ADA, 42 U.S.C. §§ 12101, et seq., and the regulations promulgated thereunder.

55. To address this *broad* range of discrimination in the context of public accommodations, Congress enacted Title III, which by its clear text, requires a public accommodation to provide individuals with disabilities more than simple physical access. Congress recognized that "individuals with disabilities continually encounter *various forms of discrimination"* including not only barriers to physical access, but also other forms of exclusion and *relegation to lesser services, programs, activities, benefits, jobs, or other opportunities*. 42 U.S.C. 12101(a)(5); see also H.R. Rep. No. 485, Pt. 2, 101st Cong., 2d Sess. 35-36 (1990) ("lack of physical access to facilities" was only one of several "major areas of discrimination that need to be addressed"); H.R. Rep. No. 485, Pt. 3, 101st Cong., 2d Sess. 54 (1990) ("It is not sufficient to only make facilities accessible and usable; this title prohibits, as well, discrimination in the provision of programs and activities conducted by the public accommodation.").

56. For that reason, the Act applies not only to barriers to physical access to business locations, but also to any policy, practice, or procedure that operates to deprive or diminish *full and equal enjoyment* of the privileges and *services to individuals with disabilities.* 42 U.S.C. 12182. Thus, a public accommodation may not have a policy,

practice or procedure that excludes individuals with disabilities from services. 42 U.S.C. § 12182(b)(1)(A)(i).

57.   The keystone for this analysis is Defendant *must start by considering how its facilities are used by non-disabled guests and then take reasonable steps to provide disabled guests with a like experience*. <u>Spector v.  Norwegian Cruise Line Ltd.,</u> 545 U.S. 119, 128–29, 125 S.Ct. 2169, 162 L . E d . 2d 97 (2005) See also, <u>Baughman v.  Walt Disney World Company</u>, 685 F.3D 1131, 1135 (9th Cir. 2012).

58.   Plaintiff was denied full and equal access to Genghis Grill. Plaintiff specifically and definitely wants to return to the Defendant's restaurant to enjoy premier dining experience offered by Genghis Grill. More specifically, Plaintiff wants to be afforded the same level of service that is offered to non-disabled individuals as described more fully below: Defendant has failed to provide Plaintiff the same premier dining experience emphasizing delicious, fresh ingredients and a build your own bowl experience by Genghis Grill's discriminatory use of its seating arrangements that are designed, positioned and orientated in a way that excludes or otherwise segregates individuals with disabilities to an experience that is not the same high -quality food and professional service dining experience that is afforded to able-bodied individuals. Unlike able bodied individuals,  individuals with disabilities are forced to sit at one type of table or facing the wall, or are otherwise outright excluded from the "opportunity" to sit anywhere else that able-bodied individuals are able to sit and enjoy the premier dining experience; Defendant has failed to provide the same experience by making it nearly impossible for individuals with disabilities to access the build your own stir fry bowl self-service counter, while the non-disabled can

independently access the counter and the services provided at the counter; Defendant has failed to provide Plaintiff the same experience at the bar by failing to provide a bar counter that conforms to the ADA design standards, which means Plaintiff cannot enjoy the experience of ordering drinks at the bar, happy hour at the bar, watching sporting events on the TV's at the bar, viewing and selecting the assortment of on-tap beer selection, viewing and selecting the outstanding selection of wines, or any other benefit or service able-bodied individuals enjoy when sitting at the bar counter; Defendant has failed to provide an accessible dining area for individuals with disabilities, which means Plaintiff cannot independently use and dine in the dining area; Defendant has failed to provide an accessible restroom for individuals with disabilities, which means that, unlike the able-bodied, individuals with disabilities are challenged or denied the opportunity to independently use all of the elements and fixtures in the restroom, move throughout the restroom, and prohibited from using all the other elements of the restroom; Defendant's continued failure to maintain ADA accessibility as an integral part of the highest possible experience that non-disabled individuals get to independently enjoy has segregated or otherwise treated Plaintiff and others similarly situated differently, in that, Genghis Grill makes Plaintiff dependent on family or an independent third party which is not the same experience afforded to non-disabled individuals and all the foregoing failures by Defendant inhibited Plaintiff from having the same experience that non-disabled individuals have when at Genghis Grill.

59. In its Preamble to the title III regulation, the Department of Justice recognized that mobility impaired persons including persons in wheelchairs should have the same

opportunities to enjoy the goods and services and other similar events of public accommodation with their families and friends, just as other non-disabled individuals do. The DOJ further recognized that providing segregated accommodations and services relegates persons with disabilities to the status of *second-class citizens*. 28 C.F.R. pt. 36, App. B, § 36.203.

60.   The ADA specifically makes it unlawful to provide individuals with disabilities with an "unequal benefit," and to relegate individuals with disabilities to a "different or separate" benefit. 42 U.S.C. §§ 12182(b)(1)(A) )(ii)-(iii); 28 C.F.R. § 36.202(b)-(c). Further, 28 C.F.R. § 302(b) requires that goods, services, and accommodations be provided to individuals with disabilities in "the most integrated setting appropriate." 42 U.S.C. § 12182(b)(1)(B); 28 C.F.R. § 36.203(a). Similarly, the Preamble in addition to recognizing that persons who use wheelchairs have been forced to sit apart from family and friends, also recognizes that persons who use wheelchairs historically have been provided "inferior seating" and "segregated accommodations" compared to non-disabled individuals, thus relegating persons who use wheelchairs "to the status of second-class citizens." See 28 C.F.R. pt. 36, App. B, at 631-633, 651 (2000) (discussion of §§ 36.308, 36.203).

61.   Thus, Defendant's "use" of the accessible features constitutes statutory discrimination in violation of the ADA, because Defendant has segregated and separated individuals with disabilities from non-disabled individuals. "*The goal is to eradicate the invisibility of the handicapped. Separate-but-equal services do not accomplish this central goal and should be rejected.*" *H.R. Rep. No. 101-485(III), at 50, 1990 U.S.C.C.A.N at 473.* The ADA provides a "broad mandate" to "eliminate

discrimination against disabled individuals, and to integrate those individuals into the economic and social mainstream American life. *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 675, 121 S.Ct.1879, 149 L.Ed.2d 904 (2001) (*quoting H.R.Rep. No. 101-485, pt. 2, p.50 (1990), reprinted in 1990 U.S.C.C.A.N. 303, 332*).

62.   Defendant discriminated against Plaintiff by denying Plaintiff "full and equal enjoyment" and use of the goods, services, facilities, privileges and accommodations of the facilities during each visit. Each incident of deterrence denied Plaintiff an equal "opportunity to participate in or benefit from the goods, services, facility, privilege, advantage, or accommodations" of Genghis Grill.

63.   Defendant's conduct and Defendant's unequal treatment of Plaintiff constitutes continuous violations of the ADA and absent a Court ordered injunction from doing so, Defendant will continue to treat Plaintiff and others similarly situated unequally.

64.   Defendant's failure to maintain the accessible features that are required to be readily accessible to and usable by individuals with disabilities constitute continuous discrimination and absent a Court ordered injunction, Defendant will continue to fail to maintain the required accessible features at Defendant's facilities. 28 C.F.R.§ 36.211(a).

65.   Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action. He is entitled to have his reasonable attorney's fees, costs and expenses paid by the Defendant pursuant to 42 U.S.C. § 12205.

66.   Pursuant to 42 U.S.C. § 12188, this Court is authorized to enjoin these illegal acts of Defendant.

**COUNT FOUR**
**VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, TITLE III**
**42 U.S.C. § 12183(a)(1)**
*(Failure to design and construct facilities for ADA compliance)*

67.   Plaintiff incorporates by reference and re-alleges all of the paragraphs above.

68.   42 U.S.C. § 12183(a)(1) provides:

> *[Discrimination includes] a failure to design and construct facilities for first occupancy later than 30 months after July 26, 1990, that are readily accessible to and usable by individuals with disabilities, except where an entity can demonstrate that it is structurally impracticable to meet the requirements of such subsection in accordance with standards set forth or incorporated by reference in regulations issued under this subchapter.*

69.   Congress passed the ADA in part because "historically, society has tended to isolate and segregate individuals with disabilities, and such forms of discrimination ... continue to be a serious and pervasive social problem." 42 U.S.C. § 12101(a)(2). Congress found that this discrimination included "segregation and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities." Id. § 12101(a)(5). In its Preamble to the title III regulation, the Department of Justice recognized that persons in wheelchairs should have the same opportunities to enjoy the goods and services and other similar events of a public accommodation with their families and friends, just as other non-disabled individuals do. The DOJ further recognized that providing segregated accommodations and services relegates persons with disabilities to the status of *second-class citizens*. 28 C.F.R. pt. 36, App. B, § 36.203.

70.   To eliminate such segregation Congress enacted the requirement that facilities be

"readily accessible to and usable by individuals with disabilities". This very requirement is intended to enable persons with disabilities "*to get to, enter and use a facility*." H.R. Rep. No. 101- 485(III), at 499-500 (1990). It requires "a high degree of convenient accessibility," id., as well as access to the same  services that  are provided to members of the general public. "For new construction and alterations, the purpose is *to ensure that the service offered to persons with disabilities is equal to the service offered to others*." *Id.*

71. As the legislative history makes clear, the ADA is geared to the future-- the goal being that, over time, access will be the rule rather than the exception. Thus, the ADA only requires modest expenditures to provide access in existing facilities, *while requiring all new construction to be accessible*. H.R. Rep. 485, Part 3, 101st Cong., 2d Sess. 63 (1990).

72. To realize its goal of a fully accessible future, Congress required that all newly constructed facilities be designed and constructed according to architectural standards set by the Attorney General. 42 U.S.C. §§ 12183(a), 12186(b). Those Standards for Accessible Design ("Standards") are incorporated into the Department of Justice's regulation implementing title III of the ADA, 28 C.F.R. Part 36, Appendix A. The Standards set architectural requirements for newly constructed buildings that apply to all areas of the facility, from parking areas, interior walkways and entrances, common areas, interior stairways and elevators, restrooms, dressing rooms and sales/service areas.

73. Defendant, Chalak Restaurant Cordova LLC, "operates" and "leases" the Genghis Grill restaurant located at 2362 N Germantown Pkwy, Memphis, TN 38016, and was

directly involved in the designing and/or construction of its establishment in this litigation for first occupancy after January 1993.

74. Defendant was and is required to design and construct the Genghis Grill establishment to be "readily accessible to and usable by individuals with disabilities." Defendant violated the statute by failing to design and construct *its establishment to be* readily accessible to and usable by individuals with disabilities including individuals who use wheelchairs. Defendant further violated the statute by failing to design and construct its establishment in compliance with the ADA during planned alterations as described throughout this Complaint.

75. According to Defendant's own publicly available information, Defendant chose to design its establishment in a way that is not ADA Title III compliant. In an attempt to avoid making its services and associated features accessible to individuals with disabilities until demanded by those with disabilities to make the repairs, Defendant literally strategically design each one of its establishments without any regard to ADA Accessibility. Defendant's systematic design of its establishment and its failure to maintain accessible features fails to afford individuals with disabilities the same quick service dining experience that is afforded to individuals without disabilities.

76. To date, the Defendant's discriminating actions continue.

77. Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action. He is entitled to have his reasonable attorney's fees, costs and expenses paid by the Defendant pursuant to 42 U.S.C. § 12205.

78. Pursuant to 42 U.S.C. § 12188 this Court is authorized to enjoin these illegal actions

by Defendant.

**WHEREFORE**, premises considered, Plaintiff demands judgment against the Defendant on Counts One through Four and requests the following injunctive and declaratory relief:

1.  That the Court declare that the property owned and business operated by the Defendant as well as all Defendant's illegal actions described herein violate the Americans with Disabilities Act, as more particularly described above;

2.  That the Court enter an order enjoining the Defendant to alter the facility to make it accessible to and usable by individuals with disabilities to the full extent required by Title III of the ADA, to comply with 42 U.S.C. § 12182(b)(2)(A)(iv) and its implementing regulations, as stated in Count One;

3.  That the Court enter an order, in accordance with Count Two, directing the Defendant to modify its policies, practices, and procedures both to remedy the numerous ADA violations outlined above, in violation of 42 U.S.C. § 12182(b)(2)(A)(ii), and to permanently enjoin Defendant to make its business practices consistent with ADA Title III in the future;

4.  That the Court enter an order directing the Defendant to provide Plaintiff full and equal access both to the Genghis Grill experience and to the use of the establishment, and further order Defendant to maintain the required accessible features at the establishment so that Plaintiff and others similarly situated are offered the experience that is offered to non-disabled individuals, as stated in Count Three;

5.  That the Court enter an Order directing the Defendant to evaluate and neutralize its policies, practices, and procedures towards persons with disabilities for such reasonable time so as to allow them to undertake and complete corrective procedures;

6. That the Court enjoin Defendants to remediate the Genghis Grill establishment to the proper level of accessibility required for design and construction of facilities for first occupancy, as stated in Count Four;

7. That the Court award reasonable attorney's fees, costs, (including expert fees) and other expenses of suit, to Plaintiff; and

8. That the Court award such other, further, and different relief as it deems necessary, just, and proper.

Respectfully Submitted, this the 23rd Day of August, 2018.

/s/ Pshon Barrett
**Pshon Barrett**
MS- 2071
ADA Group LLC
4001 Carmichael Road, Suite 570
Montgomery, Alabama 36106
334.819.4030 p
334.521.3859 f
Pshon.Barrett@ADA-Firm.com
*Attorney for the Plaintiff*

*/s/ Bradley D. McAdory*
    **BRADLEY D. MCADORY**
    **BPR # TN-018112**
    ADA Group LLC
    4001 Carmichael Road, Suite 570
    Montgomery, Alabama 36116
    334.819.4030 p
    334.521.3859 f
    Email: BDM@ADA-Firm.com
    *Attorney for the Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that I have this day filed with the Clerk of Court the aforementioned

Complaint for service of process by USPS mail or electronic mail, postage prepaid and properly

addressed this 23rd day of August, 2018 to the following:

**CHALAK RESTAURANTS CORDOVA LLC**
c/o Corporate Creations Network Inc
attn.: Registered Agent
205 Powell Pl
Brentwood, TN 37027-7522

/s/ Pshon Barrett
**Pshon Barrett**
MS- 2071
ADA Group LLC
4001 Carmichael Road, Suite 570
Montgomery, Alabama 36106
334.819.4030 p
334.521.3859 f
Pshon.Barrett@ADA-Firm.com
*Attorney for the Plaintiff*